

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2014 JAN 10  AM 11: 06

WILLIAM W. BLEVINS
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LEONARD TANSKI AND LINDA TANSKI, * | NUMBER: |
| * | SECTION: **14 - 74** |
| Plaintiffs * | |
| * | JUDGE: |
| VERSUS * | |
| * | MAGISTRATE: **SECT.3 MAG 1** |
| CITY OF NEW ORLEANS, MAYOR MITCH * | |
| LANDRIEU,  NOPD SUPERINTENDENT * | |
| RONAL SERPAS, NOPD OFFICER JERMELL * | |
| A. TAYLOR, NOPD SGT. R. BLANCHARD, * | |
| NOPD SGT. LUTHER R. RANDALL, * | |
| CAPTAIN CHRIS GOODLY, COMMANDER, * | |
| 5TH DISTRICT, NOPD CAPTAIN JEFF * | |
| WALLS, COMMANDER, 8TH DISTRICT, * | |
| NOPD LT. JOHN/JANE DOE 1-2, NOPD * | |
| NOPD SGT. JOHN/JANE DOE * | |
| 1-2 and NOPD OFFICERS JOHN/JANE * | |
| DOE 1-2 * | CIVIL RIGHTS |
| * | Under 42 USC 1983 and 1988 |
| Defendants * | |
| * | JURY TRIAL REQUESTED |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

## I. JURISDICTION

1.      This action is brought pursuant to 42 U.S.C. 1983 and 1988.  Jurisdiction is

founded on 28 U.S.C. Section 1331 and 1343, the First,, Fifth, Ninth and Fourteenth

1

Fee 400.00 pd.
___ Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No. _____

Amendments to the Constitution of the United States.   Supplemental jurisdiction over claims under state constitutional and statutory law is also invoked.     A jury trial is requested.

## II. PARTY PLAINTIFFS

2.      Plaintiffs Leonard Tanski and Linda Tanski are persons of the full age of majority. They are domiciled in the State of New York.  They are the natural parents of decedent, Lauren Tanski, who died leaving no spouse or children to survive her.

## III. PARTY DEFENDANTS

3.      Defendant City of New Orleans, made a defendant herein, is a political subdivision of the State of Louisiana and a municipal corporation, which was at all relevant times the employer of the defendant New Orleans Police Department (NOPD) personnel named herein, as well as other unnamed NOPD personnel involved herein. Defendant City is directly liable for the acts complained of herein due to the policies, practices, procedures and customs of its police department and its employees. It is also responsible for the hiring, training, supervision, discipline and control of NOPD personnel as described herein, as well as other unnamed police employees and supervisors who had responsibility for the acts and omissions described herein. Defendant City is also vicariously liable for the actions of its employees as described herein, under state law.

4.      Defendant Mitch Landrieu is a person of the full age of majority and is a

resident of the Eastern District of Louisiana. At all times pertinent herein, he was the duly elected Mayor of the City of New Orleans. Defendant Landrieu was responsible for the supervision, administration, policies, practices procedures and customs for the City of New Orleans and its police department, as further described herein. He was responsible to see that the safety and security of the city and the rights of its residents and visitors was protected, including the rights of women to be protected from gender-based bias and discrimination in policing. He was responsible for the hiring, training, discipline, supervision and control of the defendant NOPD Superintendent Ronal Serpas. He was on notice about the seriously deficient and unconstitutional policies and practices of the NOPD relating to gender bias and domestic violence and failed to take appropriate and necessary action to address these serious deficiencies, as described further herein. He is a final policymaker. At all pertinent times herein he was acting under color of law and in the course and scope of his employment. He is sued individually and in his official capacity as the Mayor of the City of New Orleans.

5.      Defendant Ronal Serpas  was the Superintendent of Police for the City of New Orleans at all pertinent times herein. He was responsible for the supervision, administration, policies, practices, customs and procedures of the NOPD, as well as the hiring, training, supervision, discipline and control of police personnel under his command which includes the NOPD defendants named and referenced herein as well as other,

unnamed police employees who had responsibility for the acts and omissions described herein. He was responsible to see that the safety and security of the city and the rights of its residents and visitors was protected, including the rights of women to be protected from gender-based bias and discrimination in policing. He was on notice about the seriously deficient and unconstitutional policies and practices of the NOPD relating to gender bias and domestic violence and failed to take appropriate and necessary action to address these serious deficiencies, as described further herein. He is of the full age of majority and is a resident of the Eastern District of Louisiana. He is sued individually and in his official capacity. At all pertinent times herein he was acting under color of law and in the course and scope of his employment. He was a final policymaker for the City of New Orleans relating to police practices, policies, customs and procedures.

6.     Defendant NOPD Officer Jermell A. Taylor was employed by the City of New Orleans as an NOPD police officer. He is a person of the full age of majority and, on information and belief, is a resident of the Eastern District of Louisiana. At all pertinent times herein, defendant NOPD Officer Taylor was an employee of the City of New Orleans, serving as a police officer with the NOPD and was acting under color of law and in the course and scope of his employment. He is sued in his individual and official capacity.

7.     Defendants NOPD Sgts. R. Blanchard and Luther R. Randall were employed by the City of New Orleans with the NOPD, assigned at pertinent times to the 5th District,

NOPD. They are each persons of the full age of majority and on information and belief are residents of the Eastern District of Louisiana. At all pertinent times herein, in addition to being responsible for his own acts and omissions, Sgts. Blanchard and Randall were responsible for  the supervision, monitoring and oversight of the activities of defendant NOPD officer Jermell A. Taylor,  and other NOPD officers and employees involved herein. At all times pertinent herein,  defendants NOPD Sgts. R. Blanchard and Luther R. Randall were acting under color of law and in the course and scope of his employment with the City of New Orleans and is sued in his individual and official capacity.

8.      Defendant Captain Chris Goodly, Commander of the 5th District of the New Orleans Police Department, was employed by the City of New Orleans at all pertinent times herein. He was responsible for the operations and implementation of policies, practices, customs and procedures of the NOPD, as well as the training, supervision, discipline and control of personnel under his command which includes  NOPD defendants named and referenced herein as well as other, unnamed police employees who had responsibility for the acts and omissions described herein. He is of the full age of majority and is a resident of the Eastern District of Louisiana. He is sued individually and in his official capacity. At all pertinent times herein he was acting under color of law and in the course and scope of his employment.

9.      Defendant Captain Jeff Walls, Commander of the 8th District of the New

5

Orleans Police Department, was employed by the City of New Orleans at all pertinent times

herein. He was responsible for the operations and implementation of policies, practices,

customs and procedures of the NOPD, as well as the training, supervision, discipline and

control of personnel under his command which includes NOPD defendants named and

referenced herein as well as other, unnamed police employees who had responsibility for

the acts and omissions described herein. He is of the full age of majority and is a resident

of the Eastern District of Louisiana. He is sued individually and in his official capacity. At

all pertinent times herein he was acting under color of law and in the course and scope of

his employment.

10.     Defendant NOPD Lt. John/Jane Doe 1 was employed by the City of New

Orleans with the NOPD, assigned at pertinent times to the 5th District, NOPD. He/she is a

person of the full age of majority and, on information and belief, is a resident of the Eastern

District of Louisiana. In addition to being responsible for his/her own acts and omissions,

Lt. John/Jane Doe 1 was responsible for the supervision, monitoring and oversight of the

activities of defendants NOPD Sgts. R. Blanchard and Luther R. Randall, and NOPD

officer Jermell A Taylor, as well as other NOPD officers and employees involved herein.

At all pertinent times he/she was acting in the course and scope of his/her employment and

under color of law.   He/she is sued individually and in his/her official capacity.

11.     Defendants NOPD Police Officers John/Jane Does 1-2 were employed by

the City of New Orleans with the NOPD, assigned at pertinent times to the 8th District, NOPD. They are each persons of the full age of majority and, on information and belief, are residents of the Eastern District of Louisiana. At all pertinent times herein they were each acting under color of law and in the course and scope of his/her employment. They are each sued in their individual and official capacity.

12.     Defendants NOPD Sgt. John/Jane Doe 1-2 were employed by the City of New Orleans with the NOPD, assigned at pertinent times to the 8th District, NOPD. They are each persons of the full age of majority and on information and belief are residents of the Eastern District of Louisiana. At all pertinent times herein, in addition to being responsible for his/her own acts and omissions, Sgt. John/Jane Doe 1-2 were responsible for the supervision, monitoring and oversight of the activities of defendant NOPD officers John/Jane Doe 1-2 and other NOPD officers and employees involved herein. At all times pertinent herein, defendants NOPD Sgt. John/Jane Doe 1-2 were acting under color of law and in the course and scope of his/her employment with the City of New Orleans and is sued in his/her individual and official capacity.

13.     Defendant NOPD Lt. John/Jane Doe 2 was employed by the City of new Orleans with the NOPD, assigned at pertinent times to the 8th District, NOPD. He/she is a person of the full age of majority and on information and belief is a resident of the Eastern District of Louisiana.   In addition to being responsible for his/her own acts and omissions,

Lt. John/Jane Doe 2 was responsible for the supervision, monitoring and oversight of the activities of defendants NOPD Sgts. John/Jane Doe 1-2 and NOPD Officers John/Jane Doe 1-2 as well as other NOPD officers and employees involved herein. At all pertinent times he/she was acting in the course and scope of his/her employment and under color of law. He/she is sued individually and in his/her official capacity.

14.     The identities of defendants NOPD Lt. John/Jane Doe 1 and 2, NOPD Sgt. John/Jane Doe 1-2 and NOPD Officers John/Jane Doe 1-2 are currently unknown to the plaintiffs, despite diligent efforts to ascertain their identities. Each of these defendants is well aware of their own acts and omissions in this matter, as are the defendants, and their identities are known or easily ascertainable to the other defendants named herein.

### IV. STATEMENT OF FACTS

15.     Lauren Tanski was a young, vibrant 26 year old woman who grew up in the State of New York. She was creative and artistic, an aspiring poet. Like many young people from around the country post-Katrina, Lauren was drawn to the City of New Orleans. She moved to New Orleans in the fall of 2012, joining other friends who had moved here already. She was fascinated with the City of New Orleans and began exploring and photographing the city. She got a job as a waiter working at a restaurant in the French Quarter. In late December 2012/early January 2013, she moved into an apartment with a co-worker as her roommate.

16.     Henry Dolliole, III was a convicted felon, on probation for heroin possession, and was known as a violent and abusive individual with an extensive criminal record, including a history of allegations of domestic violence. On Jan. 11, 2013, he was involved in a dispute with his ex-girlfriend, who was Lauren Tanski's roommate and co-worker. Mr. Dolliole came to the residence where Lauren Tanski and her roommate lived and physically assaulted and threatened his ex-girlfriend. The residence was located in the 5th NOPD District, which at all pertinent times was commanded by Defendant Captain Chris Goodly.

17.     The NOPD was notified and defendant NOPD officer Jermell A. Taylor was dispatched to investigate a Signal 103D (Domestic Disturbance). Upon arrival at the scene, Officer Taylor did not properly investigate the complaint or arrest Dolliole or take other necessary and reasonable measures, given the situation. He failed to document visible injuries on the victim, failed to solicit or document key facts regarding past history of domestic violence or assault and failed to note symptoms of strangulation or ask appropriate follow-up questions related to strangulation. He failed to find and interview witnesses. He failed to refer the victim or other members of the household for assistance with the New Orleans Family Justice Center or to follow guidelines or protocols reflecting best practices for police handling of domestic violence incidents.

18.     Defendants Sgts. R. Blanchard and Luther R. Randall, Lt. John/Jane Doe 1 and Captain Chris Goodly failed to properly train, supervise or discipline Officer Taylor and

condoned and ratified his acts and omissions.

19.     On information and belief, Lauren Tanski's roommate had visible, physical signs of injury when the NOPD responded to the Jan. 11, 2013 call, including bruising on her arms and near her neck area.

20.     On information and belief, there had been numerous previous incidents of allegations of domestic violence and physical assaults regarding Mr. Dolliole, involving Lauren Tanski's roommate as well as other victims, which were not properly investigated or responded to by NOPD.

21.     Two days later, on January 13, 2013, Mr. Dolliole came to the restaurant where Lauren Tanski and her roommate worked  and made violent threats to cause death and serious bodily harm.

22.     The restaurant where Lauren and her roommate worked is located in the 8th NOPD District which, at all pertinent times herein, was commanded by defendant Captain Jeff Walls.

23.     On information and belief, NOPD officers, including John/Jane Does 1 and 2 were made aware of the incident, but they did not properly investigate the complaint or arrest Dolliole or take  other necessary and reasonable measures, given the situation. Further on information and belief, defendants Sgt. John/Jane Doe 1 and 2, Lt. John/Jane Doe 1 and Captain Jeff Walls  failed to properly supervise or discipline the NOPD officers

involved and condoned and ratified their acts and omissions.

24.     Later, on the evening of Jan. 13, 2013, after Lauren Tanski had returned to her residence after work, Mr. Dolliole appeared at the home Ms. Tanski shared with Mr. Dolliole's ex-girlfriend and violently attacked, beat, strangled and stabbed Lauren Tanski.

25.     Lauren Tanski died from the wounds inflicted by Mr. Dolliole, who is now charged criminally with her murder. In the criminal proceedings against him, Mr. Dolliole has asserted that he is mentally incompetent. State v Henry Dolliole, III, Case #415678, Orleans Parish Criminal District Court.

26.     On information and belief, there had been numerous previous incidents of allegations of domestic violence, physical assaults and threats by Mr. Dolliole involving Lauren Tanski's roommate and co-worker, as well as other victims, which were not properly investigated or responded to by NOPD.

27.     Further on information and belief, defendants NOPD Captains Chris Goodly and Jeff Walls, Lt. John/Jane Doe 1-2, Sgts. R. Blanchard and Luther R. Randall, and Sgts. John/Jane Doe 1-2 ("NOPD supervisor defendants") knew, must have known, or should have known about the serious threat to life and safety posed by Henry Dolliole III to his ex-girlfriend and to any persons in close proximity to her, her household and her workplace, including her roommate and co-worker Lauren Tanski, yet failed to take appropriate or necessary action. The NOPD supervisor defendants condoned and ratified

11

the acts and/or omissions of defendants NOPD officers Jermell Taylor and NOPD Officers John/Jane Does 1-2 as well as other officers under their command and supervision who failed to properly or adequately respond to these incidents and complaints.

28.    On information and belief, defendants knew, must have known or should have known that the policies and practices of the NOPD, resources, training, supervision and discipline of NOPD officers, including the defendants herein, were wholly inadequate and were tainted by a gender-based bias against women victims, particularly in investigating and enforcing the laws regarding crimes such as sexual assault and domestic violence, resulting in discriminatory policing, yet failed to take appropriate and necessary action to remedy the situation.

29.    In addition and/or in the alternative, on information and belief defendant police officers and/or supervisors  knew, must have known or should have known, or known of, Mr. Dolliole and/or were aware that he had associations and/or relationships with police officers which improperly protected him from being  investigated and held accountable for his violent threats and actions, including his repeated behavior of threatening and engaging in domestic violence and threats against women.

30.    On March 16, 2011, as a result of an extensive investigation, the U.S. Department of Justice, Civil Rights Division ("DOJ") issued a "Findings Letter" pursuant to an investigation conducted by DOJ. The DOJ found "reasonable cause to believe that

NOPD engages in a pattern or practice of discriminatory policing in violation of constitutional and statutory law" and that the NOPD "fails to adequately investigate violence against women, including sexual assaults and domestic violence." The DOJ found that the staffing of the NOPD Domestic Violence Unit was "wholly inadequate to address the volume of the Department's domestic violence calls and provide appropriate follow-up and services to victims". The DOJ further found that there was no meaningful follow-up investigation conducted by NOPD in domestic violence calls.

31. In addition, the DOJ found that "patrol officers and district investigative officers handle the vast majority of on-scene investigations in domestic violence cases (and) that officers, prosecutors and advocates reported that training for these officers has long been grossly inadequate, compromising the quality, completeness, and consistency of on-scene investigations and written reports." The DOJ found that in many cases, "officers failed to solicit or document key facts regarding past history of domestic violence or assault, or include sufficient information to identify the primary aggressor in a situation. Officers also failed to note symptoms of strangulation or ask appropriate follow-up questions related to strangulation." DOJ further found that "in most instances, efforts to find and interview witnesses were minimal", including the failure to interview neighbors or other witnesses who had relevant information.

32. In addition, the New Orleans Family Justice Center (NOFJC), a local

13

advocacy and service center for domestic violence victims, has urged implementation of an Integrated Protocol for Law Enforcement, which NOPD, as of March, 2011, had reviewed but not endorsed or adopted as policy. Additionally, police officers and supervisors routinely failed to refer victims of domestic violence to NOFJC for assistance and support, despite the obvious need for critical services for victims of domestic violence. Specific findings and a comprehensive set of recommendations provided by NOFJC to NOPD have not been fully or adequately adopted or implemented by the NOPD.

33.     Furthermore, the defendants City of New Orleans, Mayor Landrieu and Superintendent Serpas have consistently and deliberately failed to provide adequate funding, staffing or resources required to insure that NOPD would practice constitutional policing for victims in cases involving sexual assault and domestic violence. In recent years NOPD has assigned only 3-4 domestic violence detectives to cover the entire City which is wholly inadequate and has contributed to a gender-based bias in policing by the NOPD in sexual assault and domestic violence cases.

34.     On July 24, 2012, the United States of America (USA) filed a complaint in the U.S. District Court, Eastern District of Louisiana, against the City of New Orleans (USA v City of New Orleans, No. 12-1924) alleging numerous constitutional and statutory violations by the NOPD. ("USA Complaint")

35.     The USA Complaint alleged that the City of New Orleans and its agents,

14

"through their acts or omissions, engage in a pattern and practice of discriminatory policing by NOPD officers", including discrimination on the basis of gender. The complaint further alleged that "discriminatory policing by NOPD takes the form of selective law enforcement based on protected status", including but not limited to "failing to investigate adequately, on the basis of gender, incidents of sexual assault and domestic violence..." The complaint further alleged that "the patterns or practices of unconstitutional conduct set out above are caused by pervasive deficiencies in Defendant's systems for directing, training, supervising and holding accountable NOPD officers. These deficient systems demonstrate the City of New Orleans's deliberate indifference to the patterns or practices of unconstitutional conduct committed by NOPD officers." The complaint further enumerated numerous examples of these systemic deficiencies, including "failing to adequately evaluate, document, and investigate incidents of sexual assault and domestic violence".

36.     The USA Complaint was allotted to U.S. District Court Judge Susie Morgan. The same day the complaint was filed, a 129-page proposed Consent Decree between the USA and the City of New Orleans was also filed in the court record. ("NOPD Consent Decree") The proposed NOPD Consent Decree set forth numerous terms and conditions in order to insure that the NOPD would engage in constitutional, non-discriminatory policing free from gender-based bias, including in cases involving sexual assaults and domestic violence.

37.   On Sept 21, 2012 a Fairness Hearing was conducted by Judge Morgan in the NOPD Consent Decree case, where testimony was introduced regarding issues relating to discriminatory policing and gender-based bias by NOPD, including in the investigation and handling of incidents involving sexual assault and domestic violence.

38.   On Jan. 11, 2013, defendant City of New Orleans, acting through the direct orders given personally by its Mayor and Chief Executive Officer, Mayor Mitch Landrieu, notified Judge Susie Morgan that the City of New Orleans no longer supported the NOPD Consent Decree and wished to withdraw from that Agreement. Judge Morgan denied the City's motion to vacate, which was initially made verbally and later in writing. That same day, Jan. 11, 2013, Judge Morgan approved the amended NOPD Consent Decree. Judge Morgan's decision was subsequently affirmed by the 5th Circuit Court of Appeals on Sept 27, 2013. USA v. City of New Orleans, 5th Cir. No. 13-30161.

39.   On information and belief, the defendants City of New Orleans, Mayor Mitch Landrieu and Superintendent Ronal Serpas knew, must have known or should have known that the policies and practices of the NOPD constituted discriminatory policing based on gender bias against women, in violation of the U.S. Constitution as well as federal law, vis a vis sexual assaults and domestic violence. These defendants had notice of these serious, systemic constitutional and statutory violations long before Lauren Tanski was murdered, but failed to take appropriate or necessary steps to remedy the situation.

Instead, these defendants delayed adoption and implementation of essential remedies to correct and address NOPD's discriminatory policing and condoned and ratified the perpetuation of said discriminatory policies and practices.

## V. CAUSES OF ACTION

40.     Plaintiffs re-allege paragraphs 1-39.

41.     The actions of the defendants,  in deliberately failing to adequately investigate the serious and repeated complaints against Mr. Henry Dolliole III, or to arrest him or otherwise hold him accountable for domestic violence or other related crimes or violations of the terms of his probation or parole, directly and proximately caused grievous physical and emotional injury, pain, suffering and death to Lauren Tanski in violation of her rights as guaranteed under the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, to privacy, to liberty, to due process, and to equal protection under the law, all in violation of 42 U.S.C. 1983.

42.     The defendants, acting together and under the color of law, reached an understanding, engaged in a course of conduct and otherwise conspired among themselves to commit those acts and omissions described herein and to deprive Lauren Tanski of her constitutional rights as set forth herein.

17

43.     The defendants had knowledge of the wrongs done and conspired to be done as described herein, had the power to prevent or aid in the prevention of same, yet failed or refused to do so in violation of 42 USC 1983.

44.     The City of New Orleans had the power to prevent or aid in the prevention of the wrongs done and conspired to be done as described herein, yet failed or refused to do so, in violation of 42 USC 1983.

45.     The City of New Orleans, by and through its police department, has long had widespread unconstitutional policies, practices and customs, including, but not limited to, gender-based bias towards women victims, by failing to properly investigate complaints of sexual assault and domestic violence, failing to properly arrest and charge the perpetrators of sexual assaults and domestic violence or to seek revocation of probation or parole of those perpetrators, and failing to properly supervise and discipline officers who fail to properly investigate, arrest and charge in sexual assault and domestic violence cases. The City of New Orleans has developed and maintained policies, practices, procedures, and exhibited deliberate indifference to the constitutional rights of victims of sexual assaults and domestic violence, which caused the violation of plaintiffs' rights and those of Lauren Tanski, deceased, as described herein and the resultant damages suffered. These policies, practices, procedures and customs include but are not limited to those described herein as well as the following:

18

1. Failing to adequately staff the NOPD Domestic Violence Unit.

2. Failing to adequately train, supervise or discipline police officers involved with domestic violence incidents, thereby compromising the quality, completeness, and consistency of on-scene investigations, written reports and arrests, including failure to solicit or document key facts regarding past history of domestic violence or assault or include sufficient documentation to identify the primary aggressor in a situation, failing to note symptoms of strangulation or ask appropriate follow-up questions related to strangulation, failure to find and interview witnesses, among other failures.

3. Failing to properly screen before hiring and failing to properly supervise, discipline, train or control police officers and supervisors under its jurisdiction and control, including the defendant officers, supervisors and commanders.

4. Failing to provide adequate or reasonable supervision, discipline, monitoring or control of officers or supervisors, including the defendants herein, so that officers' conduct and treatment of victims, in particular regarding gender-based bias in policing relative to sexual assault and domestic violence, was not adequately monitored or supervised, there was no meaningful evaluation, scrutiny, or accountability regarding the investigation and handling of cases involving sexual assault and domestic violence a were not held accountable for the acts and/or omissions of their subordinates.

5. Failing to adequately or properly monitor or investigate incidents or allegations of misconduct and/or violations of law by NOPD officers and supervisors relative to improper acts and/or omissions regarding sexual assault and domestic violence incidents and instead condoning, tolerating and ratifying the misconduct. and mistreatment of victims of sexual assault and domestic violence.

6. Failing to take reasonable and necessary steps to properly investigate, charge, maintain and defend disciplinary action for misconduct by officers, supervisors or commanders regarding acts and/or omissions relating to investigating and handling of allegations of sexual assault and domestic violence, so that disciplinary investigations and actions, when taken, were frequently undermined, with the result that they were frequently abandoned,

reduced or lost on appeal with a corresponding decay and decline in professionalism, accountability and discipline in the police department, to the detriment of the civil rights of victims of sexual assault and domestic violence.

7.Failing to keep accurate and reasonable records of incidents involving allegations of police misconduct relating to discriminatory policing relative to sexual assault and domestic violence victims, and the investigation, handling and resolution of those incidents.

8.Failing to conduct appropriate training, in-service training, re-training or enhanced supervision of officers who were known or believed or suspected to have engaged in misconduct or inappropriate acts or omissions regarding handling cases and victims of sexual assault and/or domestic violence.

9.Failing to reasonably or appropriately monitor civil litigation or criminal proceedings involving allegations of sexual assaults and/or domestic violence.

10.Failing to properly operate, maintain and staff an adequate "early warning system" to flag police personnel for whom there is concern regarding improper behavior or violation of the rights of victims of sexual assaults and/or domestic violence, and to institute appropriate monitoring, supervision, training or intervention regarding said officers.

11.Failing to properly operate, maintain and staff an adequate internal investigative agency to identify, investigate and take appropriate action to prevent and/or take corrective action towards eliminating discriminatory policing and gender-based bias in policing in sexual assault and domestic violence incidents, including but not limited to failing to keep adequate or reasonable records of citizen calls and complaints, failing to conduct meaningful investigation or analysis of patterns of misconduct, failing to conduct pro-active investigations or other appropriate or reasonable measures to prevent discriminatory policing due to gender-based bias and to protect victims of sexual assaults and/or domestic violence.

12.Failure to establish a reliable, professional system for independent and objective monitoring and review of the NOPD's policies, practices, procedures, customs and operations so as to insure that professional

standards and "best practices" are in place and are being implemented regarding prevention and/or corrective actions necessary to eliminate discriminatory policing due to gender-based bias and to protect victims of sexual assaults and/or domestic violence.

13. Failure to allocate adequate training, resources and staffing to insure that the rights of victims of sexual assault and domestic violence to non-discriminatory policing free from gender-based bias, are protected.

14. Condoning, approving and supporting a culture and environment within the NOPD in which NOPD personnel, including the defendants herein, had the reasonable belief or expectation that their actions would not be properly monitored by supervisory or command officers and that their misconduct and/or unlawful or inappropriate acts or omissions would not be thoroughly investigated or sanctioned, but would be approved and tolerated.

15. Failing to adequately hold supervisory or command officers responsible for misconduct of their subordinates.

46.     The actions and omissions of the defendants as described herein were done with deliberate indifference to the constitutional rights of the plaintiffs and Lauren Tanski. The defendants have acted maliciously, willfully, wantonly, and in reckless disregard of plaintiffs' rights and those of Lauren Tanski.

47.     The acts and omissions of the defendants as described herein were done under color of law.

48.     The acts and omissions of the defendants as described herein were also done with negligence, gross negligence and/or intent, in violation of Louisiana statutory and constitutional law and, with regard to Lauren Tanski caused her death, and subjected her

to assault, battery, intentional infliction of emotional distress, and violation of her rights to privacy, to liberty,   to due process, and to equal protection.

49.     The defendant City of New Orleans negligently hired, retained, supervised, failed to discipline and entrusted the defendants as NOPD officers and supervisors in violation of Louisiana law.

50.     The acts and omissions of the defendants and other NOPD personnel as described herein were within the course and scope of their employment and the City of New Orleans is vicariously liable for their acts and omissions in accordance with Louisiana law.

51.     The defendants are jointly and severally liable for the wrongs complained of herein, either by virtue of direct participation or by virtue of encouraging, aiding, abetting, committing, and/or ratifying or condoning the commission of the above described acts and/or omissions.

52.     The acts and omissions of the defendants as described herein, were the proximate cause of the injuries and damages suffered by plaintiffs and Lauren Tanski.

## VI. DAMAGES

53.     As a result of the actions of the defendants as described above, damages have been incurred, as follows:

    1.     Lauren Tanski suffered  severe physical, mental and emotional injury and pain and suffering, pre-death terror and death.

22

2.    Leonard Tanski, the father of Lauren Tanski, has suffered the loss of love, companionship, and affection of his daughter Lauren and incurred funeral and burial costs.

3.    Linda Tanski, the mother of Lauren Tanski, has suffered the loss of love, companionship, and affection of her daughter Lauren and incurred funeral and burial costs.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray that after due proceedings, there be judgment in their behalf and against all defendants, jointly, severally and in solido, as follows:

1.    Compensatory damages on behalf of plaintiffs.

2.    Funeral and burial costs.

3.    That plaintiffs be awarded reasonable attorneys fees and all costs of these proceedings.

4.    That judicial interest be awarded from the date of judicial demand.

5.    That this matter be tried by a jury.

6.    All other relief that this Court deems just and proper.

Respectfully Submitted,

*Leonard Tanski* 1-9-2014

Leonard Tanski, In Proper Person
12 Ravenwood Drive
Albany, NY 12205
(518) 452-0834

*Linda A. Tanski* 1/9/2014

Linda Tanski, In Proper Person
12 Ravenwood Drive
Albany, NY 12205
(518) 452-0834

23